UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AMERICAN COMPUTER AND DIGITAL COMPONENTS, INC.,<br><br>    Debtor. | Case No. LA 04-19259 TD<br><br>Adv. No. LA 04-02298 TD<br><br>Chapter 7 |
| RICHARD K. DIAMOND, Chapter 7 Trustee,<br><br>    Plaintiff.<br><br>    v.<br><br>TOP COMMUNICATION, INC.,<br><br>    Defendant. | MEMORANDUM OF DECISION<br><br>DATE: June 20, 2005<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 1345 |

**INTRODUCTION**

This adversary proceeding was brought by the Chapter 7 Trustee of American Computer and Digital Components, Inc. (ACDC), against Top Communication, Inc., for money allegedly owed by Top Communication to ACDC. It was tried on June 20, 2005, pursuant to my trial setting order entered March 8, 2005, by written declaration. The plaintiff introduced the declaration of David R. Bell, of Brandlin and Associates, a

forensic accounting firm retained initially by Harris Bank to review ACDC's records, and later by the trustee, plaintiff herein, to evaluate ACDC's assets and liabilities. (Decl. of David R. Bell (Bell Decl.) ¶¶ 1, 4-5.)

Using the accounting records and software of ACDC, Brandlin and Associates generated an Accounts Receivable aging report (the A/R aging report). (Bell Decl. ¶ 7.) As of March 31, 2004, this report reflects an outstanding balance of $545,577.50 due from Top Communication to ACDC. (Ex. 1.)

The plaintiff also introduced as evidence copies of ACDC's invoices to Top Communication. (Ex. 2.) These invoices reflect charges for various types of computer hard drives. (Id.) The charges reflected in the invoices introduced by plaintiff total $496,679.75. (Bell Decl. ¶ 8.) The copies of the invoices, as presented by plaintiff, are photocopies of only the front side of what appear to be original invoices. (Ex. 3.) At trial, defendant moved to introduce what appear to be the original invoices themselves. These were accepted into evidence, but only with respect to the "Terms and Conditions" printed on the reverse side of each invoice.[1]

Prior to ACDC's bankruptcy filing, Mr. Bell also sent "Confirmation Letters" to certain of ACDC's account debtors, including Top Communication. (Bell Decl. ¶ 9.) One purpose of these letters was to verify the existence and confirm the

---

[1] This evidence was marked at trial as "Defendant's Exhibit A - reverse side only."

2

amount of outstanding receivables owed by these account debtors. (Bell Decl. ¶ 9.) Mr. Bell sent a Confirmation Letter, dated March 6, 2004,[2] by facsimile to Top Communication. (Id.) Sometime thereafter, Mr. Bell received back the Confirmation Letter bearing the signature of "Charlie Wang," from Top Communication. (Id., see Ex. 1.) The Confirmation Letter states, "Our records indicate that, at the close of business on March 31, 2004, the amount receivable on our records was $545,577.50." (Ex. 3.) The signature of "Charlie Wang" appears directly below the final line of the Confirmation Letter, which reads "We agree with the amount shown above." (Ex. 3.)

On the basis of this evidence, plaintiff requests a judgment against Top Communication in the aggregate amount of $545,577.50 plus pre- and post-judgment interest. (Compl. at 3.) Plaintiff asserts two alternative theories in support of this request for judgment in the amount of $545,577.50. First, plaintiff alleges that the evidence states a claim for goods sold and delivered. Alternatively, plaintiff states that the evidence supports a claim for account stated.

Defendant Top Communication did not introduce any direct evidence. At trial, defendant called Charlie Wang (also known as Chu Jong Wang[3]) as a rebuttal witness. According to counsel

---

[2] Mr. Bell testified at trial that he sent the Confirmation Letter in early April; according to his testimony, the earlier date on the letter was the result of a typographical error.

[3] See Depo. of Chu Jong Wang (Wang Depo.), 6:4-6:8.

3

for defendant, the purpose of Mr. Wang's rebuttal testimony was to "clarify" certain testimony given by Mr. Bell. Mr. Wang's testimony focused mainly on whether he had in fact signed the Confirmation Letter and whether he had in fact spoken to Mr. Bell via telephone at any time. During plaintiff's cross examination of Mr. Wang, plaintiff read into the record certain parts of Mr. Wang's deposition, taken March 21, 2005.[4]

## DISCUSSION

### 1. The Confirmation Letter Establishes a Claim for Account Stated in the Amount of $545,577.50

"An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent. The account stated does not itself discharge any duty but is an admission by each party of the facts asserted and a promise by the debtor to pay according to its terms." Restatement (Second) of Contracts § 282. The parties' assent may be either express or implied. Id.

The invoices, which date from approximately February 5, 2004, to approximately March 19, 2004, establish that ACDC and Top Communication transacted business with each other over a period of time. (Ex. 2.) ACDC kept accounts of these transactions; the A/R aging report generated by Brandlin and

---

[4] Wang Depo., 17:12-19:16.

4

Associates reflects an outstanding balance, based on ACDC's records, of $545,577.50. (Ex. 1.) An account statement to that effect was presented to Top Communication. (Ex. 3.) Accordingly, the merit of plaintiff's claim for an account stated in the amount of $545,577.50 depends entirely on whether the evidence establishes either an express or implied manifestation of assent by Top Communication to that amount.

Although the Confirmation Letter bears the signature of "Charlie Wang," based on Mr. Wang's deposition testimony, as well as Mr. Wang's rebuttal testimony at trial, I find that Charlie Wang did not sign the Confirmation Letter personally. However, based on the following portion of Mr. Wang's deposition, which was introduced into evidence at trial, I find that Mr. Wang's wife signed the letter on his behalf and at his express direction.

> Q. I'd like you to look at the bottom of that letter where it starts, "We agree with the amount shown above." And under it, there is a signature which to me looks like it says "Charlie Wang." Is this your signature?
>
> A. This is not my signature.
>
> Q. Did you receive this letter?
>
> A. I have seen it.
>
> Q. So you have seen it because your company received this letter?
>
> A. Yes.

1  Q. And that is not your signature at the bottom?
2  A. No, because I was not at the office at the time.
3  Q. What time would that be?
4  A. I don't remember.
5  Q. Do you recall what day you saw this letter?
6  A. No, I don't remember. That was a year ago.
7  Q. But you've seen this letter?
8  A. Yes.
9  Q. Would you have any idea who's (sic) signature
10 that is?
11 A. My wife's.
12 Q. What is your wife's name?
13 A. Ann. Ann Ma.
14 Q. Can you spell that for the record, please.
15 A. (In English) Ann, A-N-N, Ma, M-A.
16 Q. Are you currently married to her?
17 A. Yes.
18 Q. And you were married to her when she executed
19 this letter?
20 A. Yes.
21 Q. Did she - do you know why she signed this letter?
22     Mr. Lo: Objection to that as calls for
23 speculation.
24     THE WITNESS: As I said, I wasn't there at the
25 time. And -
26

```
 1        BY MR. TUNG:
 2        Q.  Did you tell her to sign this letter?
 3        A.  Yes.
 4   (Wang Depo., 18:1-19:16.)
```

5    I find that the Confirmation Letter establishes a
6 manifestation of assent by Top Communication to the amount of
7 $545,577.50 as an accurate computation of the amount owed by
8 Top Communication to ACDC.  By directing his wife to sign the
9 Confirmation Letter, Mr. Wang expressly manifested his assent
10 thereto.

11    Although plaintiff never clearly established Mr. Wang's
12 position at Top Communication, defendant does not contend that
13 Mr. Wang was not an authorized agent of Top Communication.  To
14 the contrary, defendant presented Mr. Wang at trial in a way
15 that suggested Mr. Wang was the company's spokesperson and
16 representative.  Defendant merely disputes whether Mr. Wang
17 personally signed his name to the Confirmation Letter;
18 defendant has not offered any evidence or argument to dispute
19 plaintiff's claim that the Confirmation Letter constitutes a
20 manifestation of assent by Top Communication.  I find that the
21 evidence supports plaintiff's claim for an account stated in
22 the amount of $545,577.50.

23    Even assuming, *arguendo*, that the Confirmation Letter was
24 not signed by an authorized agent of Top Communication, the
25 evidence still meets the requirements for a claim for account
26 stated.  The deposition testimony of Mr. Wang proves that Mr.

Wang saw the Confirmation Letter and was aware of its existence.[5] Mr. Bell testified that the Confirmation Letter was faxed to Top Communication on or about April 6 or 7, 2004. Although defendant disputes whether Mr. Wang in fact signed the letter, there is no evidence to suggest that Top Communication objected to the amount stated in the letter.[6] Accordingly, even if the Confirmation Letter bore no signature, the failure of defendant to object within a reasonable time to the amount stated in the Confirmation Letter constitutes an implied agreement to the account balance of $545,577.50. <u>California Bean Growers Assn. v. Williams</u>, 82 Cal. App. 434, 442-43 (1927) (debtor's failure to object within a reasonable time to a statement rendered by creditor gave rise to claim for account stated).

Because the Confirmation Letter alone suffices to establish a claim for account stated in the amount of $545,577.50, it is not necessary to discuss whether Brandlin and Associates was authorized to generate the A/R aging report

---

[5] Although Mr. Wang testified at trial that he had not seen the letter prior to his deposition, his deposition testimony is clearly to the contrary. (Wang Depo., 18:7-18:20.)

[6] Although defendant requests a "setoff" for warranties that allegedly could not be honored due to ACDC's bankruptcy, this bears no relevance to defendant's agreement to an account balance of $545,577.50 as of March 31, 2004, more than one month before ACDC filed bankruptcy.

or the sufficiency of the report itself.

### 2.  Defendant is Not Entitled to a Setoff

The Bankruptcy Code preserves, in some instances, the common law right "of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a). "The burden of proving an enforceable right of setoff rests with the party asserting the right." Fed. Nat'l Mortgage Ass'n v. County of Orange (In re County of Orange), 183 B.R. 609, 615 (Bankr. C.D. Cal. 1995). The party seeking to establish a setoff right must prove that it has a right of setoff under nonbankruptcy law and that this right should be preserved in bankruptcy under § 553. Id.

While other requirements also must be satisfied, a fundamental element of a right to setoff is the existence of a "mutual debt." 11 U.S.C. § 553. Here, defendant simply asserts, without any evidence of a debt owed by ACDC, or reference to any case authority, or even to the Bankruptcy Code, that it is "entitled to claim a set-off of at least 50% of the invoiced amount." (Def's. Trial Br. at 3.) Defendant has not introduced evidence that might establish a debt owed by ACDC to Top Communication. Defendant's Exhibit A simply establishes that ACDC had certain warranty obligations, not that the warranty was breached in any way or that defendant

incurred any loss as a result.

In fact, the only evidence as to the existence of a debt owed by ACDC is found in the Confirmation Letter, which states, "[ACDC's] records indicate that, at the close of business on March 31, 2004, the amount <u>payable</u> [to Top Communication] was $0." (Ex. 3 (emphasis added).) As discussed above, Top Communication assented to this statement of account.

Defendant presented no evidence of any kind, other than Exhibit A. Defendant did not establish that any of the goods were defective. In short, defendant has produced insufficient evidence to establish a setoff. Therefore, I find that defendant's claim of a right to setoff is without merit.

### 3. Plaintiff Entitled to Pre-Judgment Interest

"If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligations shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code Ann. § 3289(b) (West 2004). Plaintiff asks this court to award pre-judgment interest at the rate of 10% from August 19, 2004 (the date the complaint was filed) to the date of entry of judgment. (Pl.'s Trial Br. at 5.) According to Civil Code section 3289, this court should award pre-judgment interest of $149.47 per day.[7]

---

[7]($545,577.50 x .10) ÷ 365 = $149.47 per day.

**4. Conclusion**

The Confirmation Letter, introduced as evidence by plaintiff, establishes Top Communication's liability in the total principal sum of $545,577.50. Plaintiff is also entitled to pre-judgment interest of $149.47 per day, from August 19, 2004 until the date judgment is entered by this court. Accordingly, plaintiff is entitled to pre-judgment interest in the amount of $46,784.11.[8] A separate judgment will be entered based on the foregoing in favor of the plaintiff and against Top Communication.

SO ORDERED.

DATED: June 27, 2005

*/s/ Thomas B. Donovan*

THOMAS B. DONOVAN

United States Bankruptcy Judge

---

[8] 313 days from August 19, 2004 to June 28, 2005 (inclusive), at $149.47 per day.

11

Case 2:04-ap-02298-TD    Doc 22-1    Filed 06/27/05    Entered 06/29/05 00:00:00    Desc
Main Document    Page 12 of 12

NOTICE OF ENTRY OF JUDGMENT OR ORDER
AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1.  You are hereby notified that a judgment or order entitled:

**MEMORANDUM OF DECISION**

was entered on  6/29/05  .

2.  I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on  6/29/05  .

<u>Plaintiff</u>
Chapter 7 Trustee
Richard K. Diamond
Danning, Gill, Diamond &
Kollitz, LLP
2029 Century Park East,
Third Floor
Los Angeles, CA 90067-2904

<u>Attorneys for Plaintiff</u>
Richard D. Burstein
Kim Tung
Danning, Gill, Diamond &
Kollitz, LLP
2029 Century Park East,
Third Floor
Los Angeles, CA 90067-2904

<u>Attorney for Defendant</u>
Michael Y. Lo
506 N. Garfield Ave., #280
Alhambra, CA 91801

<u>United States Trustee</u>
Office of the U.S. Trustee
Ernst & Young Plaza
725 S. Figueroa St.,
26th Floor
Los Angeles, CA 90017

Dated: 6/29/05

_____
Clerk